UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ELLIS JORDAN, | ) | CIV. 08-4080-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | REPORT AND |
| vs. | ) | RECOMMENDATION |
| | ) | |
| ARCHIE LONGLEY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## INTRODUCTION

This matter is before the court pursuant to a petition under 28 U.S.C. § 2241 for a writ of habeas corpus filed by petitioner, Ellis Jordan, on June 12, 2008.  [Docket 1].  Mr. Jordan challenges the Bureau of Prisons' ("BOP") denial of his request to relocate to another correctional facility.  Respondent resists this petition and moves to dismiss it, arguing that the BOP's decision complies with its established policies and that Mr. Jordan has no constitutional right to placement at a particular institution.  [Docket 9].

Mr. Jordan also moves for an evidentiary hearing.  [Docket 12].  Mr. Jordan's petition for a writ of habeas corpus and motion for an evidentiary hearing were referred to this magistrate judge for a report and recommendation to the district court pursuant to Chief Judge Schreier's order dated June 17, 2008 [Docket 5], and 28 U.S.C. § 636(b)(1)(B).

## FACTS AND PROCEDURAL HISTORY

In 2003, the district court for the Eastern District of Wisconsin sentenced Mr. Jordan to 180 months imprisonment followed by five years of supervised release on his convictions for conspiracy to distribute and possession with intent to distribute cocaine and cocaine base, 21 U.S.C. §§ 846, 841(A)(1), and 846(B)(1)(A).  [Docket 10-1].  Mr. Jordan is presently incarcerated at Federal Prison Camp Yankton ("FPCY"), a federal correctional facility located in Yankton, South Dakota, and has resided there since July 11, 2006.  [Docket 1]. In January of 2008, Mr. Jordan pursued BOP administrative remedies to seek a "nearer release" transfer to a correctional facility closer to his ailing father in Mississippi.  [Docket 10-2].  The BOP denied this request for transfer on the basis that his current placement at Yankton was appropriate and in compliance with internal regulations.  Id.

Having exhausted all available administrative remedies, Mr. Jordan filed an affidavit and a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this court.  [Dockets 1, 2].  Mr. Jordan challenges the BOP's refusal to grant his request for a nearer release transfer.  Respondent moves for dismissal of Mr. Jordan's habeas petition.  [Docket 9].  In support of its position, respondent submitted affidavits from Kathy Nelson, a unit manager at FPCY, and Maureen Steffen, a supervisor of education at FPCY.

2

**DISCUSSION**

The court has personal jurisdiction over Mr. Jordan as he is currently incarcerated, and was incarcerated at the time of filing the petition, at FPCY, a federal corrections facility located in this district.  Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Bell v. United States, 48 F.3d 1042, 1043-44 (8th Cir. 1995); United States v. Monteer, 556 F.2d 880, 881 (8th Cir. 1977) ("Habeas corpus jurisdiction [under § 2241] lies only when petitioner's custodian is within the jurisdiction of the district court.").  Additionally, the respondent concedes that Mr. Jordan's claims are ripe as he exhausted the administrative remedies offered by the BOP prior to filing the instant petition. See Dockets 9, 10; see also United States v. Tindall, 455 F.3d 885, 888 (8th Cir. 2006) (for claims that relate to the execution of a sentence, petitioners must exhaust BOP administrative remedies before seeking federal review through the filing a § 2241 petition).

Challenges to the execution of a sentence (i.e., how a sentence is being carried out by the BOP) are properly cognizable in a § 2241 habeas petition. Matheny, 307 F.3d at 711; Bell, 48 F.3d at 1043; see also Jiminian v. Nash, 245 F.3d 144, 146 (2d Cor. 2001) ("[A] motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of

3

detention and prison conditions.") (emphasis in original).  However, federal courts may only grant relief on a § 2241 petition on the grounds that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2241(c)(3).  A petitioner who brings a § 2241 petition in federal court to challenge the conditions of his confinement must point to some violation of his constitutional or statutory rights and protections.  As stated by the Eighth Circuit, "[f]ederal prisoners, however, may not resort to habeas corpus petitions to challenge every condition of confinement.  This court has previously determined that federal prisoners may seek writs of habeas corpus to challenge their conditions of confinement only if they allege a 'substantial infringement of a constitutional right(.)' " Albers v. Ralston, 665 F.2d 812, 815 (8th Cir. 1981) (citing Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974)).

The placement and housing of a prisoner in a particular correctional facility certainly qualifies as a condition of confinement.  Thus, to receive federal review of his petition, Mr. Jordan must show that he has a statutory or constitutional right to chose the location of his confinement and to be transferred to another correctional facility upon request.  If such a right exists, then the BOP's denial of his request for transfer would be contrary to law and would warrant habeas relief.

**A.     Whether Mr. Jordan Has a Legal Right to Placement and Transfer**

The Supreme Court has made it abundantly clear that a prisoner has no constitutional right to chose the particular correctional facility he wishes to be housed at or to be transferred to another facility upon request.  See generally, Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976).  A prisoner has no due process interest in his placement at a particular correctional facility nor does the United States Constitution "guarantee that the convicted prisoner will be placed in any particular prison."  Meachum, 427 U.S. at 223-25; see also Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976).

However, the BOP must comply with federal law and its own regulations and must apply those laws nondiscriminately.  Melvin v. Petrovsky, 720 F.2d 9, 12 (8th Cir. 1983).  Section 3621(b) of Title 18 of the United States Code "provides the BOP with broad discretion to choose the location of an inmate's imprisonment."  Fults v. Sanders, 442 F.3d 1088, 1090 (8th Cir. 2006).  However, § 3621(b) sets forth "criteria that must be considered by the BOP in making placement determinations" on a case-by-case basis.  Id. at 1091.  Once the BOP evaluates each prisoner's case individually based on the criteria set forth in § 3621(b), the BOP has complete discretion to place a prisoner at any facility that meets the appropriate standards.  Id. at 1092.  Section 3621(b) reads as follows:

> (b)  Place of imprisonment.–The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may

designate any available penal or correctional facility that meets
minimum standards of health and habitability established by the
Bureau, whether maintained by the Federal Government or
otherwise and whether within or without the judicial district in
which the person was convicted, that the Bureau determines to be
appropriate and suitable, considering–

>    (1) the resources of the facility contemplated;
>    (2) the nature and circumstances of the offense;
>    (3) the history and characteristics of the prisoner;
>    (4) any statement by the court that imposed the sentence–
>        (A) concerning the purposes for which the sentence to
>        imprisonment was determined to be warranted; or
>        (B) recommending a type of penal or correctional
>        facility as appropriate; and
>    (5) any pertinent policy statement issued by the Sentencing
>    Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers
under this subsection, there shall be no favoritism given to
prisoners of high social or economic status.  The Bureau may at
any time, having regard for the same matters, direct the transfer of
a prisoner from one penal or correctional facility to another.  The
Bureau shall make available appropriate substance abuse
treatment for each prisoner the Bureau determines has a treatable
condition of substance addiction or abuse.  Any order,
recommendation, or request by a sentencing court that a convicted
person serve a term of imprisonment in a community correctional
facility shall have no binding effect on the authority of the Bureau
under this section to determine or change the place of
imprisonment of that person.

18 U.S.C. § 3621(b).

The BOP has established rules and regulations to help guide its

administrators in addressing prisoner placement and transfer requests.  One

such policy is Program Statement 5100.08, entitled "Inmate Security

Designation and Custody Classification," which states, in pertinent part:

6

**Nearer Release Transfers (Code 313).**  Nearer release transfers move the inmate closer to their legal residence or release destination, consistent with their security level.  Inmates may be considered for a nearer release transfer only after serving 18 consecutive months of clear conduct in a general population.  Nearer release transfers should be incorporated with "Lesser Security" transfers whenever possible.  Once the inmate has been transferred within 500 miles of his or her release residence, no further referrals will be made for nearer release transfer consideration.

Transfer to a facility in an area other than the inmate's legal residence or sentencing district may be considered by the inmate's Unit Team provided the inmate can provide strong evidence of community and/or family support.  Institution staff should use sound correctional judgment when reviewing such requests for transfer to ensure the transfer is consistent with guidelines established in this chapter.

Program Statement 5100.08, Chapter 7, p. 4, available at www.bop.gov.

Mr. Jordan requested a "nearer release transfer" to FPC Montgomery, a correctional facility that is closer to his family and ailing father in Mississippi and that has educational opportunities not offered at FPCY.  The BOP considered his request in light of Program Statement 5100.08 and denied it because Mr. Jordan did not "meet the eligibility requirements for a nearer release transfer."  See Docket 10-2.  Mr. Jordan's current legal residence and release destination are listed as the Eastern District of Wisconsin because (1) he had lived in Milwaukee, Wisconsin, from 1973 until his incarceration in 2003, a total of over 30 years and (2) the district of sentencing is the Eastern District of Wisconsin.  Id.  Mr. Jordan has already been placed within 500 miles of his current release residence.  Id.  The BOP determined that no further

7

nearer release transfers were warranted until 11-13 months prior to his projected release date, when a request for relocation may (if Mr. Jordon still desires it) be submitted to the United States Probation Office. Id. The probation office will then "review the proposed [relocation] plan, interview family and community members to evaluate the inmate's ties to the area, and make a decision whether or not to approve the relocation request." See Docket 10-1. Mr. Jordan's request for a nearer release transfer years before his projected release date in 2016 clearly runs afoul of Program Statement 5100.08. Given that family members may move to another city or state and that job opportunities and community ties may change, it would simply be a waste of resources to investigate a relocation or release plan years before a prisoner's actual release date. Id.

Mr. Jordan's bare assertion, without any supporting facts, that the BOP "arbitrarily and vindictively" denied his nearer release transfer request is completely without merit. Mr. Jordan fails to point to any BOP regulation or federal statute that gives him the right to be transferred to the facility of his choice in order to be closer to relatives. Nor is the court aware of such regulation or statute. Mr. Jordan also fails to point to any BOP regulation or federal statute that gives him the right to be transferred to the facility of his choice in order to pursue certain educational goals. Again, the court is unaware of any such statute or regulation. Indeed, BOP Program Statement

8

5100.08 states that an inmate is ordinarily only transferred to participate in certain specialized national programs such as residential drug treatment programs, life connections programs, special management units, and sex offender programs.  <u>See</u> BOP Program Statement 5100.08, Chapter 7, p. 7.

Additionally, there is no *constitutional* right to receive visitation from friends or family or to partake in educational or vocational opportunities.  <u>See</u> <u>Becerra v. Miner</u>, 248 Fed.Appx. 368, 370 (3d Cir. Sept. 19, 2007) (unpublished opinion) (prisoner has no "due process interest in his assignment to a particular institution, including one closer to his family"); <u>Davis v. Carlson</u>, 837 F.2d 1318, 1319 (5th Cir. 1988) (BOP has no duty to transfer prisoner to a facility closer to his wife's residence); <u>Brown-Bey v. United States</u>, 720 F.2d 467, 470 (7th Cir. 1983) (if petitioner "wants to be transferred closer to his family and friends, he fails to state a cognizable federal claim"); <u>Moore v. United States Attorney Gen.</u>, 473 F.2d 1375, 1376 (5th Cir. 1973) (petitioner cannot seek writ of mandamus to compel the Attorney General or warden to transfer him to a facility closer to his family because such a claim is not cognizable under federal law); <u>see also</u> <u>Wishon v. Gammon</u>, 978 F.2d 446, 450 (8th Cir. 1992) ("Prisoners have no constitutional right to educational or vocational opportunities during incarceration; however, if the state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services to all prisoners [at a particular correctional facility] absent a rational

9

basis.") (citing <u>Spencer v. Snell</u>, 626 F.Supp. 1096, 1097 (E.D.Mo.), <u>aff'd</u>, 786 F.2d 1171 (8th Cir. 1986)).

Vague, generalized accusations of discrimination without the establishment of facts from which at least an inference of discrimination might be possible are insufficient to entitle Mr. Jordan to relief on his petition.  In denying Mr. Jordan's transfer request, the BOP properly evaluated Mr. Jordan's request, taking into consideration Mr. Jordan's security classification, safety concerns, and inmate population issues, and determined that placement at FPCY was appropriate and in compliance with its own program statements.  The court finds no evidence of discrimination in the BOP's treatment of Mr. Jordan.  <u>See Albers</u>, 665 F.2d at 816 (court found no constitutional violation in warden's refusal to award prisoners six-point credit when prisoners failed to show that the BOP applied its regulations inconsistently or singled out any prisoner for unequal treatment).  Because there is no constitutional right to transfer and because the BOP has not applied its program directives in a discriminatory way, there is simply no federal issue here to warrant the court's intervention.

Nor should Mr. Jordan be granted relief based upon his assertion that transfer to FPC Montgomery is necessary to pursue certain educational goals given the variety of educational and vocational programs offered at FPCY.  The affidavit of Maureen Steffen, a supervisor of education at FPCY, reveals that

FPCY offers a veritable cornucopia of educational opportunities to its inmates including, but not limited to the following: General Educational Development (GED) and English-as-a-Second Language classes; associate degrees and one-year certificates in accounting, business, and horticulture; apprenticeship programs in such professions as electrician, painter, plumber, refrigeration mechanic, boiler operator, carpenter, cook, baker, dental assistant, heating and air conditioning installer, and industrial housekeeper; adult continuing education classes in keyboarding, basic word processing, and foreign languages; and a variety of wellness activities including intramural sports. See Docket 11. A leisure library and a law library are available to inmates as are a fitness center, "passive activities" like table games, card games, darts, and billiards, and structured classes in arts, crafts, and music. Id.

Mr. Jordan has taken several Release Preparation Program classes such as marriage enrichment, basic money management, infectious disease, living sober, and build a better body class. Id. Further, he has participated in a leather class, a personal insurance class, and an introduction to small businesses class, but has not availed himself of any of the myriad apprenticeship or post-secondary educational opportunities offered at FPCY. Id.

Mr. Jordan claims that FPC Montgomery offers trades such as "dog training, dry cleaning, barber or maintenance machinist" that he may wish to

pursue when transfered–trades that are not available at FPCY.  It is unreasonable to expect that every correctional facility will offer every profession, class, or training program imaginable.  The Constitution does not guarantee such a selection nor will this court require the BOP to place inmates in facilities based on a whim or mere speculation on what opportunities or activities they would like to pursue.

**B.      Whether the BOP Regulations Create a Legal Right**

Although, as discussed above, the Constitution confers no right upon a prisoner to choose a particular correctional facility to be housed at, in some cases, a statute, rule, or BOP regulation may create "constitutionally cognizable liberty interests."  See Albers, 665 F.2d at 815 (listing cases in which BOP regulations or state statutes created liberty interests).  The Eighth Circuit has established a two-part test to determine if a statute or regulation creates a liberty interest.  Williams v. Armontrout, 852 F.2d 377, 379 (8th Cir.1988).  "First, 'does a statute, regulation, or official policy pronouncement contain *particularized substantive standards* or criteria that significantly guide the decisionmakers;' and second, 'does the statute, regulation, or official policy pronouncement use mandatory language requiring the decisionmakers to act in a certain way.' "  Id. (quoting Nash v. Black, 781 F.2d 665, 668 (8th Cir. 1986)) (emphasis in original).

As evident from the language of 18 U.S.C. § 3621(b) and BOP Program Statement 5100.08, neither rule creates constitutionally cognizable liberty interests.  While § 3621(b) contains "particularized substantive standards or criteria" to help the BOP determine which correctional facility is suitable for an inmate, it does not require the BOP to transfer a prisoner to a particular facility.  See 18 U.S.C. § 3621(b).  Indeed, the statute grants the BOP the discretion to designate "any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP]."  Id. Nor does Program Statement 5100.08 create a liberty interest in placement at a particular correctional facility.  This policy does not mandate to the BOP which correctional facility an inmate should be housed at but rather sets forth the parameters of transfers.

Although the court understands that Mr. Jordan wishes to be closer to his relatives and may wish to pursue certain educational opportunities not offered at FPCY, Mr. Jordan has not pointed to any *illegal* or *unconstitutional* action taken by the BOP.  The BOP was well within its discretion to deny Mr. Jordan's request for transfer.  Mr. Jordan has failed to state a claim cognizable on federal habeas review, and his petition should be dismissed with prejudice.

13

## CONCLUSION

In accordance with the above discussion, the court recommends that Mr. Jordan's petition for a writ of habeas corpus under 28 U.S.C. § 2241 [Docket 1] be dismissed with prejudice for failure to state a cognizable claim. The court also recommends that Mr. Jordan's motion for an evidentiary hearing [Docket 12] be denied as the court's above recommendation rests solely on interpretation of law and does not depend on disputed factual issues.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated August 28, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

14